**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0178-23

JEFFREY MCAVOY,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

KELLY BERTON ROCCO, ESQ.,
and LAW OFFICES OF KELLY
BERTON ROCCO,

      Defendants,

and

STACY ANN MCAVOY and
JEFFREY ALWARD,

      Defendants-Respondents/
      Cross-Appellants.

_____

      Argued June 1, 2026 – Decided July 1, 2026

      Before Judges Sumners and Chase.

      On appeal from the Superior Court of New Jersey, Law
      Division, Bergen County, Docket No. L-5442-22.

Ronald A. Berutti argued the cause for appellant/cross-respondent (Murray-Nolan Berutti LLC, attorneys; Ronald A. Berutti and Akash Kashyap, on the briefs).

Anthony M. Bedwell argued the cause for respondents/cross-appellants (Anthony M. Bedwell Law LLC, attorneys; Anthony M. Bedwell and Alissa Pyrich, of counsel and on the briefs).

PER CURIAM

Plaintiff Jeffrey McAvoy appeals from two Law Division orders: (1) a May 12, 2023 order dismissing his claims of abuse of process, tortious interference with economic advantage, and malicious prosecution against his former wife, defendant Stacy McAvoy;[1] and (2) a September 12, 2023 order imposing sanctions on Jeffrey and his counsel for violating the Frivolous Litigation Statute ("FLS"), N.J.S.A. 2A:15-59.1. Stacy and her husband, defendant, Jeffrey Alward ("Alward") cross-appeal from the same September 12, 2023 order contending that the court should have awarded additional attorney's fees and sanctions. We affirm all orders.

I.

We glean from the record the following facts, which encompass nearly two decades of contentious legal actions between these individuals. Jeffrey and

---

[1] Because the parties share the same surname, we refer to them by their first names. We intend no disrespect.

Stacy were married until March 2005 when they divorced in New York. At the time of the divorce, the parties had one child, Kevin. In the years after the divorce, a staggering amount of almost seventy court orders were entered by the Family Part. Jeffrey's filings eventually led to an August 2012 order which barred Jeffrey from filing against Stacy without prior approval from the court.

In March 2021, Stacy filed an order to show cause looking to limit Jeffrey's contacts with Kevin. Kevin was still a high school student, and under the age of eighteen at the time. Stacy was represented by defendant, Kelly Berton Rocco ("Rocco") and her law firm. Stacy filed a certification stating that she was seeking the order because of Jeffrey's alleged verbal abuse of Kevin, which included berating Kevin and his friends in a parking lot of a sporting event, and that it was Kevin's wish that Jeffrey would not contact him. The court granted a temporary no-contact order.

On April 29, 2021, a hearing took place on the no contact order. Testimony was provided by Kevin's court appointed Guardian Ad Litem, William M. Dimin, Esq. ("Dimin"), who stated that despite his efforts, Kevin was not interested in reunification and needed time away from Jeffrey. During the hearing, Jeffrey voluntarily agreed to not contact Kevin. A final no-contact order, prohibiting Jeffrey from contacting Kevin, was finalized at the end of

A-0178-23

June. In July, the court filed an amended order granting Stacy's request for counsel fees in the sum of $8,971.50.

On July 12, 2021, Kevin, then eighteen years old, filed for and received a Temporary Restraining Order ("TRO") against Jeffrey. Kevin was represented by Rocco. In the complaint, Kevin alleged that he was fearful of Jeffrey and wanted no contact with him. An amended TRO ("ATRO") was then filed. As a result of the TRO and ATRO being filed, Jeffrey's pistol permit was revoked, and his firearms were removed from his possession.

Jeffrey unsuccessfully moved three times to dismiss the ATRO. A ten-day final restraining order trial took place in July and August 2022, with the court ultimately dismissing Kevin's ATRO.

A month later, Jeffrey filed a verified complaint against Stacy, Rocco, Rocco's law firm,[2] and Alward.[3] The complaint raised five claims: abuse of process (count I); tortious interference with economic relations (count II);

---

[2] The claims against Rocco and her law firm were dismissed before the hearings in this matter; Jeffrey is not appealing that decision.

[3] Stacy and Alward will be collectively referred to as "defendants." When referring to specific individuals they will be referred to by their designated names.

A-0178-23

malicious use of process/malicious prosecution (count III); intentional infliction of emotional distress (count IV); and fraud on the court (count V).

In January 2023, counsel for defendants sent Jeffrey's counsel a letter pursuant to Rule 1:4-8 and the FLS, advising them that the complaint was frivolous, and asking that it be withdrawn. The letter set forth that the complaint failed to contain a viable claim, as Jeffrey pled "little to no facts," that counts I, II, and IV were barred by the litigation privilege, and that the claim of malicious use of process failed because it could not be shown that Stacy filed the order to show cause without probable cause and with malice. Jeffrey's counsel failed to respond to this letter and the complaint was not withdrawn within the twenty-eight-day safe harbor window.

Subsequently, defendants moved to dismiss the complaint for failure to state a claim on which relief can be granted pursuant to Rule 4:6-2(e). After Jeffrey filed opposition, he dismissed all claims against Alward and counts IV and V against Stacy.

On May 12, 2023, the court granted Stacy's motion and dismissed the three remaining counts. In a comprehensive oral opinion, the court concluded that the litigation privilege barred Jeffrey's claims against Stacy for abuse of process and tortuous interference with business relations. In a rider to the order, the court

5

also reasoned that the malicious use of civil process cause of action was fundamentally flawed because there was probable cause, and no malice.

Defendants then moved for sanctions for frivolous litigation against Jeffrey and his counsel. The court granted the motion in a very detailed factual finding and analysis, reasoning there was no viable claim as to Alward, considering his only role was paying Stacy's legal fees. Further, the court determined that Rocco and her firm acted "well within the bounds of appropriate legal advocacy," and that Jeffrey's claims against Stacy were barred under the litigation privilege.

After further briefing, the court entered a September 12, 2023 order granting sanctions, jointly and severally, against Jeffrey and his counsel in the amount of $28,732.[4] In the Rider accompanying the order the court stated that under Rule 1:4-8, sanctions "'shall be limited to a sum sufficient to deter repetition of such conduct.'" (Quoting N.J.S.A. 2A:15-59). In calculating the sanctions, the court stated defense counsel was entitled to an hourly fee of $350 per hour—for eighty hours expended in defense of the claims—but also found that the ninety-hours counsel spent on the motion for sanctions was excessive.

---

[4] This amount has been paid to defendants' attorney without prejudice pending appeal.

A-0178-23

The court averred that several time entries by defense counsel were for editing and re-editing submissions, which it did not view appropriate for imposing sanctions.

This appeal and cross-appeal follow.

II.

Our review of a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted [is] . . . de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). "The essential test [for determining the adequacy of a pleading] is simply 'whether a cause of action is "suggested" by the facts.'" Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Valentzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988))). "At this preliminary stage of the litigation the [c]ourt is not concerned with the

A-0178-23

ability of [the] plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746.

We begin with Jeffrey's contention that the court erred in dismissing his complaint under Rule 4:6-29(e). Specifically, he argues that because Stacy was not the litigant in the TRO, her statements to Rocco were not authorized by law and thus, the litigation privilege does not apply. We are not persuaded.

The litigation privilege provides absolute immunity from civil liability for statements made during judicial or quasi-judicial proceedings. Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566, 579 (2009). To be protected by the privilege, the statement must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) . . . have some connection or logical relation to the action." Hawkins v. Harris, 141 N.J. 207, 216 (1995). "An absolute privilege may be extended to statements made in the course of judicial proceedings even if the words are written or spoken maliciously, without any justification or excuse, and from personal ill will or anger against the party defamed." De Vivo v. Ascher, 228 N.J. Super. 453, 457 (App. Div. 1988) (citations omitted). Even "defamatory" statements are immune from liability if "made in the course of judicial, administrative, or legislative proceedings."

A-0178-23

Hawkins, 141 N.J. at 213 (quoting Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990)).  Moreover, the litigation privilege is applied broadly to bar various types of tort claims based on statements made during the litigation process, regardless of how those causes of action are named.  Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564 (1955).  The privilege was conceived to ensure attorneys are "free to pursue the best course charted for their clients without the distraction of a vindictive lawsuit looming on the horizon."  Loigman, 185 N.J. at 587-88.

Any statements Stacy may have made to Kevin regarding the order to show cause filed by Stacy affected Kevin as they resulted in Jeffrey agreeing not to contact Kevin.  As such, those statements were made in connection with a judicial proceeding, and the first prong of the litigation privilege is met.  Moreover, outside of a naked conclusion, Jeffrey presents no evidentiary basis for his claims that Stacy made comments to Kevin, and that any comments made led Kevin to file the TRO.

The second prong of the litigation privilege test is also satisfied because Stacy was a litigant in the order to show cause, which Jeffrey alleges gave rise to Kevin filing the TRO; as such, she was not only a litigant but also a participant authorized by law.  The third prong is satisfied because the statements made at

the April 29, 2021 hearing were made to achieve the objective of that litigation—to prevent Jeffrey from contacting Kevin, which was Kevin's wish as testified to by Dimin. The fourth prong is also satisfied because those comments have a logical connection to this litigation. It is Jeffrey's own argument that comments made at the April 29, 2021 hearing led Kevin to file the TRO. Additionally, Kevin filed the TRO because Jeffrey violated the no-contact order, which strengthens the logical connection between the order to show cause and the TRO. Thus, defendants have established that any conduct or action taken by Stacy is protected under the litigation privilege, and therefore, Jeffrey's claims of tortious interference are barred.[5]

Jeffrey next argues that under the requirements outlined by LoBiondo v. Schwartz, 199 N.J. 62 (2009), the court erred in dismissing his claim for malicious prosecution. We disagree.

Malicious prosecution requires plaintiff to prove the following elements: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." Id.

---

[5] The litigation privilege does not preclude the claim for malicious use of process. See Baglini v. Lauletta, 338 N.J. Super. 282, 297 (App. Div. 2001) (citing Rainier's Dairies, 19 N.J. at 564-66).

10

at 90.  Each element must be proven, <u>failure to show any one</u> of the elements "<u>is fatal</u>" to the claim.  <u>Ibid.</u> (emphasis added).

Jeffrey's argument that filing a TRO is a "quasi-criminal action," misstates the law.  The filing of a TRO is a civil action.  <u>See</u> <u>N.J. Div. of Child Prot. & Permanency v. K.N.</u>, 223 N.J. 530, 534 (2025) (noting "entry of a temporary or final restraining order is not a criminal conviction."); <u>M.S. v. Millburn Police Dept.</u>, 197 N.J. 236, 248 (2008) ("A domestic violence complaint is civil in nature."); <u>Crespo v. Crespo</u>, 408 N.J. Super. 25, 32-34 (App. Div. 2009).  Moreover, Stacy was not the one who filed the TRO.  Because Jeffrey cannot satisfy prong one, his claim for malicious prosecution fails, as failure to meet any one element is fatal.  <u>See</u> <u>LoBiondo</u>, 199 N.J. at 90.

However, because Jeffrey appears to conflate malicious prosecution with its civil counterpart, malicious use of process, and the trial court dismissed the claim as malicious use of process, we will continue by evaluating the claim under that standard.  <u>See</u> <u>LoBiondo v. Schwartz</u>, 323 N.J. Super. 391, 422 n.12 (App. Div. 1999) ("We use the term 'malicious use of process' when the prior action complained of is civil, reserving the phrase 'malicious prosecution' for criminal actions although the elements of the two causes are the same.").

A-0178-23

On a claim for malicious use of process, plaintiff must prove the civil counterpart to each element of malicious prosecution, in addition to a fifth element, that the plaintiff show they "suffered a special grievance caused by the institution of the underlying civil claim." LoBiondo, 199 N.J. at 90.

As noted by the trial court, Jeffrey cannot establish that the underlying action by Stacy was brought without probable cause, as such this claim fails; nor can he do so as to Kevin filing the TRO. As for Stacy, she filed the order to show cause to stop Jeffrey from contacting Kevin due to Jeffrey's alleged verbal abuse towards Kevin,[6] and Kevin's desire that Jeffrey not contact him any longer. These allegations were further supported by Dimin, who, during the April 29, 2021 hearing, testified that Kevin did not want any contact with Jeffrey because of how Jeffrey had treated Kevin over the years. And Kevin's filing of the TRO was based on violations of the consent order.

Although Jeffrey's claim for tortious interference with economic relations was dismissed based on the litigation privilege, the court could have also dismissed this count because it failed to state a claim on which relief could be

_____

[6] Stacy's certification in support of her order to show cause cites to a text Kevin sent her stating he was tired of Jeffrey yelling at him, and Jeffrey telling Kevin to stay with Stacy and "to go f**k [himself]." Kevin stated in his text to Stacy that the yelling stressed him out, and he was "tired of being pushed around."

A-0178-23

granted.  To establish a tortious inference with economic advantage claim, a plaintiff must show:  (1) the "plaintiff was in pursuit of business"; (2) "the interference was done intentionally and with malice"; (3) "the interference caused the loss of the prospective gain"; and (4) "the injury caused damage." Printing Mart-Morristown, 116 N.J. at 751-52 (internal quotation marks and citations omitted).  For purposes of this tort, "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse."  Id. at 751.

Stacy filed the order to show cause acting on Kevin's behalf—who was still a high school student, and under eighteen years old—because Kevin feared Jeffrey, who was verbally abusive towards him, was showing up uninvited to his hockey games, and on at least one occasion, approached Kevin in the parking lot and berated him in front of his friends, causing one of Kevin's friends to intervene.  As such, Stacy was justified in filing the order to show cause, which resulted in the no-contact order.  Moreover, Kevin was justified in filing the TRO. Jeffrey violated the no-contact order on multiple occasions, leaving Kevin in further fear of Jeffrey.  A person who is in pursuit of their own lawful right cannot be held liable for tortious interference.  See Woodmont Props., LLC v. Twp. of Westampton, 470 N.J. Super. 534, 544-45 (App. Div. 2022).

A-0178-23

## III.

Jeffrey also contends the court erred in awarding sanctions to defendant. He claims he raised rational good faith arguments in support of his claims. We are not convinced.

We review a court's decision on a motion for sanctions under FLS and Rule 1:4-8 for an abuse of discretion. Borough of Englewood Cliffs v. Trautner, 478 N.J. Super. 426, 437 (App. Div. 2024) (citing Wolosky v. Fredon Township, 472 N.J. Super. 315, 327 (App. Div. 2022)); Bove v. AkPharma Inc., 460 N.J. Super. 123, 146 (App. Div. 2019). An abuse of discretion exists "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Borough of Englewood Cliffs, 478 N.J. Super. at 437 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Thus, "[r]eversal is warranted 'only if [the decision] "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment."'" Bove, 460 N.J. Super. at 146 (quoting McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005))).

An application for sanctions pursuant to the FLS is brought under Rule 1:4-8(b), which governs sanctions. The FLS provides that a trial judge may find frivolous litigation where the "nonprevailing party" advanced its claim in "bad faith, solely for the purpose of harassment, delay or malicious injury," or "knew, or should have known," its claim had no "reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(1)-(2). This is mirrored in our court rules. R. 1:4-8; see also State v. Franklin Sav. Acct., 389 N.J. Super. 272, 281 (2006) (quoting R. 1:4-8(b)(1)(i) to (ii)).

The Rule requires that an application for sanctions "shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule." R. 1:4-8(b)(1); Toll Bros., Inc v. Twp. of W. Windsor, 190 N.J. 61, 69 (2007) ("A litigant seeking sanctions under the Rule must file a separate motion[.]"). Before the filing of a motion for sanctions, "the aggrieved litigant must provide the attorney or pro se party with a procedural 'safe harbor[,]'" which "serves as a warning that the litigant will apply for sanctions 'if the offending paper is not withdrawn . . . .'" Toll Bros., Inc, 190 N.J. at 69 (quoting R. 1:4-8(b)(1)). If the motion is not withdrawn, Rule 1:4-

8(b)(2) permits the filing of a motion for sanctions within twenty days after the entry of final judgment.

The FLS and Rule 1:4-8 are to be "interpreted restrictively," and "[s]anctions should be awarded only in exceptional cases." Bove, 460 N.J. Super. at 151. The burden of proving an entitlement to sanctions under the statute and Rule is on the party seeking the sanction. Ibid. A party seeking the imposition of a sanction must not only prove the challenged "pleading, written motion, or other paper" is frivolous, it must also demonstrate its strict compliance with the procedural requirements of Rule 1:4-8. Id. at 149 (quoting R. 1:4-8). Any "failure to conform to the rule's procedural requirements will result in a denial of [a] request for an attorney's fees sanction." Ibid.

Our Supreme Court recently recognized that "[s]ince its inception, the FLS has served two purposes." Borough of Englewood Cliffs, 260 N.J. at 420 (citation omitted). First, the FLS "serves a punitive purpose, seeking to deter frivolous litigation." Ibid. (quoting Deutch & Shur, P.C. v. Roth, 284 N.J. Super. 133, 141 (Law Div. 1995)). Second, the FLS "serves a compensatory purpose, seeking to reimburse 'the party that has been victimized by the party bringing the frivolous litigation.'" Ibid. (quoting Deutch & Shur, 284 N.J. Super. at 141).

A-0178-23

Applying these principles, we discern no abuse of discretion in the court's finding that plaintiff's litigation was frivolous, as it was supported by credible evidence in the record and defendant followed the proper procedures. As found by the court, "[t]here was no coherent reason for naming [Alward] in the litigation," his only role was to finance Stacy's attorney fees. Further, the litigation privilege clearly barred the claims against Stacy for abuse of process and tortious interference. Even if the litigation privilege did not bar those claims, Jeffrey has failed to offer facts to support his claim that Stacy instigated Kevin to file his TRO, Jeffrey merely makes bald assertions that Stacy fed Kevin information from the April 29, 2021 hearing on her order to show cause that was meant to protect him. Additionally, Jeffrey's claim of malicious use of process fails as a matter of law as the TRO and ATRO were civil not quasi-criminal. Jeffrey decided not to comply with the demand to withdraw his suit even though he was on notice that defendant had dispositive defenses of litigation privilege. Consequently, we will not disturb that sanctions were imposed.

On the cross-appeal, we also believe the court did not abuse its discretion in granting $28,732 in sanctions and fees. In assessing a request for attorneys' fees, a court must determine the "lodestar," which is the "number of hours reasonably expended by the successful party's counsel in the litigation,

17

multiplied by a reasonable hourly rate." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21, (2004)). In calculating the number of hours to be used in determining the lodestar, a court "must not include excessive and unnecessary hours spent on the case." Furst, 182 N.J. at 22. So, a court has discretion to exclude certain hours from the calculation "if the specific circumstances incidental to a counsel-fee application demonstrate that the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have expended to achieve a comparable result." Rendine v. Pantzer, 141 N.J. 292, 336 (1995).

Applying these principles, we discern no abuse of discretion in awarding $28,732. The court set forth detailed reasoning explaining why this amount was appropriate based on the facts of this case. In discerning no reversible error, we also consider that the court reasoned that this amount was sufficient to deter Jeffrey from filing further litigation.

To the extent we have not addressed any arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0178-23